**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>Hannah Woldeyohannes<br><br>*Debtor* | Case No.: 11-20003 (AMN)<br>Chapter 7<br><br>Re: ECF Nos. 252, 261, 265, 266, 277, 280, 294, 295, 300 |

# MEMORANDUM OF DECISION AND ORDER OVERRULING OBJECTION TO CHAPTER 7 TRUSTEE'S NOTICE OF ABANDONMENT AND DENYING MOTION TO REOPEN EVIDENTIARY RECORD

On August 15, 2025, the court reopened this Chapter 7 case for a limited purpose: to appoint a Chapter 7 Trustee to determine whether any unadministered assets remained in Hannah Woldeyohannes's ("Debtor") bankruptcy estate. ECF No. 252 (the "Reopening Order"). For more context regarding the two-party dispute between creditor Alyssa Peterson ("Ms. Peterson") and Debtor Hannah Woldeyohannes and her family, and its relationship to this case, see case number 18-21369 (the "2018 Case"), ECF No. 317, pp. 22-23.

Because the original Chapter 7 trustee assigned to this case retired, the United States Trustee appointed Bonnie C. Mangan as the new Chapter 7 Trustee (the "Trustee"). ECF No. 256. The Reopening Order directed the Trustee to file a report clarifying whether there are unadministered assets remaining in the estate of this Chapter 7 case. ECF No. 252, p.9. The Trustee initially filed a Notice of Abandonment with respect to an unadministered 75% membership interest in a limited liability company known as A to Zee, LLC (the "LLC"; the 75% membership interest in the LLC is the "Asset"). However, because the Reopening Order limited the scope of the Trustee's tasks

to identifying whether there were unadministered assets, the court entered a second order clarifying the Chapter 7 Trustee needed to describe the steps taken and factors considered in making her determination that unadministered assets remain in this 2011 bankruptcy estate. ECF No. 261. In response, the Trustee filed a statement explaining the basis for her determination that the Asset remained in this bankruptcy case and had not been fully administered by the original trustee, and her further determination the Asset should be abandoned. ECF No. 265. Attached to the Trustee's statement was a declaration from the prior trustee, explaining his view of the Asset at the time he was the case trustee.

The court then expanded the scope of the Reopening Order to include the administration of the Asset and established a deadline for the Trustee to proceed with the Asset's administration. ECF No. 266. The Trustee filed a second Notice of Proposed Abandonment or Disposition of Property and Opportunity for Objections Thereto ("Abandonment Notice"). ECF No. 277. Pursuant to 11 U.S.C. §554(b) and Federal Rule of Bankruptcy Procedure 6007, a Notice of Abandonment results in an abandonment of estate property if there is no timely objection. No court order or hearing is required in the absence of an objection.

Here, Ms. Peterson objected to the Abandonment Notice, raising several arguments. ECF No. 280 (the "Objection"). A hearing was held on May 6, 2026. Before the court entered a ruling on the pending Objection, Ms. Peterson filed a Motion to Reopen the Evidentiary Record at ECF No. 300 ("Evidence Motion").

After consideration of the written Objection and after an oral argument held on May 6, 2026, the court finds Ms. Peterson's arguments opposing abandonment of the Asset

to be unpersuasive and the Objection will be overruled. As explained below, the Evidence Motion will be denied.

## **Background**

General familiarity with the history of this case is assumed, but additional background regarding the circumstances surrounding the reopening of this 2011 case can be found in the Reopening Order.

As relevant here, on February 5, 2026, the Trustee filed a Status Report, identifying the 75% partial interest in the LLC as an unscheduled and unadministered asset of the estate. ECF No. 265 (the "Status Report"). The Trustee detailed the steps she took to determine whether the Asset remained in this bankruptcy estate, and to determine it was an unscheduled, unadministered asset. Status Report, pp. 4-5. The Trustee concurred with the prior trustee's reasoning and conclusions as articulated in the declaration attached as Exhibit A to the Status Report (the "Declaration") that the Asset has no value to the estate. ECF No. 265, pp. 7-10. The Declaration identifies encumbrances against the underlying real property owned by the LLC which exceeded its value, and the prior trustee's concern that "unresolved matters between Ms. Peterson and the Debtor in the state court forum would continue in bankruptcy court, therefore, complicating my efforts to sell the assets of the LLC and run up costs to the estate." ECF No. 265, p. 8. To be clear, the estate has no other assets or funds from which to pay for the Trustee to hire special counsel to represent her in litigation.

The Abandonment Notice asserts the Trustee, "believes, in her business judgment, that the administration of the property is of inconsequential value and of no benefit to the creditors of the bankruptcy estate," referencing the Status Report and the Declaration as supporting this conclusion. Pursuant to 11 U.S.C. § 554(b), "[o]n request of a party in

interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

During the May 6th hearing, the Trustee argued that administration of the Asset via a bankruptcy sale would be, in her business judgment, financially and professionally burdensome and unlikely to result in any meaningful distribution to the creditors of the estate. The time and cost of conducting such a sale far exceed any expected recovery, she said. The only creditors of the estate who filed claims, and thus would be eligible to participate in any distribution of estate assets, are Ms. Peterson (claiming approximately $248,000 arising from a court judgment) and Fia Card Services, N.A. (claiming approximately $130 arising from credit card debt). The only other proof of claim filed in this case was disallowed after objection by the former Chapter 7 Trustee. ECF Nos. 133, 146.

## <u>**Applicable Law**</u>

### <u>*Abandonment in Chapter 7 Cases*</u>

Fed.R.Bankr.P. 6007 and 11 U.S.C. §554(a) govern a trustee's abandonment of bankruptcy estate assets. Rule 6007 sets forth notice and service requirements and Section 554 the type of property which may be abandoned. In particular, Section 554(a) provides: "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

Notably, upon filing a Chapter 7 petition, a debtor experiences immediate and complete divestiture of control over all estate property under 11 U.S.C. § 541(a)(1). This complete divestiture of control ensures that estate assets are preserved for the benefit of creditors and administered solely by the trustee until formal abandonment occurs.

Therefore, because a debtor is divested of control of their estate in Chapter 7, they are unable to transfer or dispose of such unscheduled estate assets unless and until the Chapter 7 trustee abandons the asset. *In re Dicks*, 579 B.R. at 708 (*citing In re Arana*, 456 B.R. 161, 170 (Bankr. E.D.N.Y. 2011)). Until then, only the Chapter 7 trustee has standing to sell, lease, transfer, or use property of the estate under § 363 – to the exclusion of the debtor. *In re Mejia,* 576 B.R. 464, 471 (Bankr. S.D.N.Y. 2017). Thus, any agreement by a Chapter 7 debtor to transfer property of the estate without prior notice and a hearing is void *ab initio* and of no force and effect. *In re Cumberbatch*, 657 B.R. 683, 703 (Bankr. E.D.N.Y. 2024).

Upon closure of a Chapter 7 case, "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c). However, unscheduled assets are not subject to 11 U.S.C. § 554(c)'s automatic abandonment upon closure of a bankruptcy case, but a trustee may nevertheless affirmatively abandon such assets under 11 U.S.C. § 554(a) by filing a notice of abandonment, like the Abandonment Notice here. *In re Dicks*, 579 B.R. 704, 708 (Bankr. E.D.N.Y. 2017); see also *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 281 (2d Cir. 2019) (accepting a trustee's abandonment of property that is not included in the debtor's schedule A/B, without deciding if inclusion of an asset solely in the debtor's statement of financial affairs is constitutes "scheduling" within the meaning of § 521(a)(1)). A Chapter 7 trustee's formal abandonment of an unscheduled asset under § 554 is the only mechanism by which such unscheduled property can exit the bankruptcy estate. Here, the Asset was not scheduled by the Debtor and the prior trustee did not file a notice of abandonment of the 75% interest in the LLC.

*Standard of Review for a Court Order Abandoning Property of the Estate*

A court order to abandon or not abandon property is reviewed on an abuse of discretion standard, unless it is based upon a clearly erroneous finding of fact. *Miller v. Generale Bank Nederland, N.V. (In re Interpictures, Inc.)*, 217 F.3d 74 (2d Cir. 2000).

*Business Judgment Standard Applies to a Trustee's Abandonment Decision*

Courts apply a business judgment standard to a trustee's decision to abandon estate property. To meet that burden, a trustee need only demonstrate she has exercised reasonable judgment, within her scope of authority, and concluded in good faith to abandon the property as a result. *In re Ditech Holding Corp*., No. 19-10412 (JLG), 2023 Bankr. LEXIS 1363, at *22 (Bankr. S.D.N.Y. May 24, 2023). The business judgment of a trustee is entitled to great deference. *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019); *In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015).

A party opposing a trustee's request to abandon property must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient. *In re Crockett*, 642 B.R. 97, 101 (Bankr. D. Conn. 2022). A party opposing abandonment must also show that a sale of an asset, pursuant to 11 U.S.C. § 363(b), is likely to be approved where that is the alternative to abandonment.

*Effect of Formal Abandonment on the Title and Ownership of Property*

Once a trustee formally abandons estate property, the abandonment constitutes a complete divestiture of the estate's interests in the property and, upon proper abandonment, the property then revests in the debtor retroactively, as though no bankruptcy had ever been filed. 5–554 *Collier on Bankruptcy* ¶ 554.02 (2017); *Chartschlaa v. Nationwide Mutual Ins. Co*., 538 F.3d 116, 123 (2d Cir. 2008)(*citing Catalano v. Comm'r*, 279 F.3d 682, 686 (9th Cir. 2002). "In other words, when property

of the bankrupt is abandoned, the title reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously." *Moses v. Howard University Hospital*, 606 F.3d 789, 795 (D.C. Cir. 2010).

*Sale of Estate Property as Alternative to Abandonment*

Like a trustee's abandonment decision, a trustee's proposed sale of estate assets, pursuant to 11 U.S.C. § 363(b), is also reviewed under the business judgment standard, and a court must determine whether the trustee's judgment to sell an asset is reasonable and whether a sound business justification exists supporting the sale and its terms. *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 464 (Bankr. S.D.N.Y. 2014). In considering whether a sale should be conducted pursuant to § 363(b), courts must consider the following factors:

> (i) whether a sound business reason exists for the proposed transaction;
> (ii) whether fair and reasonable consideration is provided;
> (iii) whether the transaction has been proposed and negotiated in good faith; and
> (iv) whether adequate and reasonable notice is provided.

*Barnes v. Barnes (In re Barnes)*, 615 B.R. 514, 524 (Bankr. D. Conn. 2020) (*Citing In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

## Discussion

### Context of this Chapter 7 Case

This Chapter 7 case presents a classic two-party dispute. The only allowed claims against the estate are Ms. Peterson's unsecured claim for over $248,000 and a claim by FIA Card Services N.A. ("FIA") for $130.09 in credit card debt. FIA was served with the Abandonment Notice and did not object. One can only assume FIA has long since written off this minimal claim and, for all intents and purposes, Ms. Peterson is the sole creditor

of this estate. Indeed, Ms. Peterson acknowledges this throughout her Objection and Supplemental Brief. ECF Nos. 280, 295.

The court denied Debtor Hannah Woldeyohannes a bankruptcy discharge in this case so Ms. Peterson can pursue collection of her pre-petition unsecured claim from the Debtor's assets that are not property of this bankruptcy estate. Continued litigation between the Debtor and her family and Ms. Peterson revealed in the 2018 Case that the Asset was potentially an unadministered asset of this 2011 bankruptcy case. The task the Trustee was assigned here – identification and administration of unadministered estate assets – needs to be completed. A bankruptcy trustee "administers" an asset of the bankruptcy estate by abandoning it when the property is otherwise burdensome to the estate or has inconsequential value. The Trustee is not required to sell assets where there are insufficient estate funds to pay for the process or where there is little prospect of an efficient sale that will generate a meaningful return to unsecured creditors.

Here, the Trustee has clearly stated that in her business judgment there are no estate funds that will pay the administrative costs for a sale and Ms. Peterson does not dispute that. Undertaking a sale process would therefore be burdensome to the estate. The Trustee also asserts the litigation surrounding the real property owned by the LLC is likely to be burdensome to the estate and to the Trustee by causing delay and additional cost when the estate has no funds to hire special counsel to represent her in any litigation. As to the value of the property owned by the LLC, the Trustee asserts it is of inconsequential value based on the existence of liens and encumbrances against the real property. The court attributes great weight to the Trustee's business judgment that the uncertainty surrounding the still-pending state court litigation will be burdensome to the

estate. The Trustee is well-acquainted with the litigation history surrounding the Asset from her experience as the Chapter 7 Trustee for the Debtor's 2018 Case.

Ms. Peterson's Arguments Against Abandonment

1. The Asset has benefit to the estate and should not be abandoned

Ms. Peterson raises three arguments in one short paragraph on page three of her Objection. Her primary argument is that the Trustee did not adequately explain how she determined the Asset has no value to creditors. But, the Trustee explained the Asset has limited or no value in the first place because the underlying real property as well as the LLC interest itself remains the subject of considerable unresolved litigation. Second, the Trustee noted the encumbrances on the underlying real property owned by the LLC exceed the value of the real property and Ms. Peterson has not argued the real property's value exceeds its encumbrances. Based on these factors, the Trustee determined that the Asset has no value net of encumbrances or other costs for creditors of the estate, considering the unresolved litigation regarding the real property. The Trustee also reasonably concluded any sale would result in substantial administrative costs to the estate which would likely exceed any reasonable recovery from a sale of Asset (the partial LLC membership interest).

Ms. Peterson also appears to argue the Trustee should administer the Asset in order to avoid a lien which was recorded against A to Zee, LLC in 2025. However, this argument is unclear and not further developed in the Objection or Ms. Peterson's Supplemental Brief filed as ECF No. 295. To the extent a 2025 lien may improperly encumber the Asset, that issue may be litigated before the state court, which is well equipped to decide it. The question before this court is limited to whether the Trustee's exercise of her business judgment to abandon the Asset was reasonable.

Ms. Peterson next argues the Trustee must proceed with a sale because Ms. Peterson is willing to purchase the Asset via a "credit bid" (and possibly some additional amount of cash to pay the Trustee's administrative expenses). At the outset, a sale pursuant to 11 U.S.C. § 363(b) must be supported by a sound business reason, fair and reasonable consideration, and be proposed in good faith, among other considerations. *Barnes v. Barnes (In re Barnes)*, 615 B.R. 514, 524 (Bankr. D. Conn. 2020). It is unclear whether any of those requirements could be met in this case.

The practical absurdity of Peterson's demand for a sale is notable. The Trustee concluded no reasonable, good faith purchaser will express any interest in the Asset if it is marketed for sale and, given the history of this litigation, that conclusion appears very reasonable. While Ms. Peterson argued she will "credit bid" using her $248,000 unsecured claim against the estate, the court notes it is unaware of a circumstance when an unsecured creditor was permitted to submit a credit bid to purchase property. In order to make the whole process work, Ms. Peterson suggests she would pay the Trustee's costs and expenses for undertaking the sale process, which just illustrates the absurdity of the exercise. Ms. Peterson can pursue her non-bankruptcy rights against the Asset at any time after the Trustee's proposed abandonment is effective, at her own cost. Her unsecured claim is not discharged by the Debtor's 2011 bankruptcy case or her later 2018 bankruptcy case. Such a sale would be of no benefit to the estate. *See, e.g.*, *In re Fialkowski*, 483 B.R. 590, 592 (Bankr. W.D.N.Y. 2012) (sale paying only expenses related to the sale does not benefit the estate whatsoever).

As the Trustee explained, the time, money, and other resources she would need to expend in order to conduct a sale of this Asset she believes to have little or no value to the estate would cause undue financial and administrative burden, and would

needlessly detract from her ability to perform her duties as a Trustee in other cases. To demand a sale when there is objectively no benefit to be realized is the equivalent of placing the Trustee on a hamster wheel.

According to the U.S. Trustee Program Policy and Practices Manual, "Trustees should not administer fully encumbered assets primarily for the benefit of the trustee and the trustee's professionals and with no meaningful distribution to creditors or other significant benefit." U.S. Trustee Program Policy and Practices Manual, Vol. 2, § 2-2.3.1, https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual (last checked September 30, 2026). In addition to the fact that the sale of a fully encumbered asset is generally prohibited, it is a breach of a trustee's fiduciary duties to make a side deal with a creditor to increase their compensation by liquidating an asset which is otherwise over encumbered and properly abandoned. *In re Stark*, No. 20-CV-4766(EK), 2022 U.S. Dist. LEXIS 114275, at *2 (E.D.N.Y. June 28, 2022) (*Citing In re Bird*, 577 B.R. 365, 379 (B.A.P. 10th Cir. 2017)); *In re Preston Lumber Corp.*, 199 B.R. 415, 416 (Bankr. N.D. Cal. 1996).

Viewed form this lens, Ms. Peterson's offers to credit bid for an Asset the Trustee views as having no value for the estate and to personally fund the Trustee's commission are self-serving and not intended to generate a commercially reasonable sale of the Asset or otherwise bring money into the estate to pay claims.

The court agrees the Trustee's business judgment is reasonable and the court should therefore defer to her determination that the Asset is unlikely to generate a return for the creditors of the estate due to the factors she identified, including substantial uncertainty due to pending litigation regarding the underlying real property owned by the LLC. Under these circumstances, the Asset is properly described as being burdensome

to the estate and/or of inconsequential value and benefit to the estate, within the meaning of 11 U.S.C. § 554(a).

2. <u>Judicial Estoppel</u>

Ms. Peterson argues abandonment of the Asset would reward the Debtor for her misconduct in concealing the Asset when she omitted it from her bankruptcy schedules. This argument is unpersuasive. *See Keathley v. BuddyAyers Constr., Inc.,* No. 25-6, 2026 U.S. LEXIS 2465, at *4 (June 11, 2026)(declining to decide if judicial estoppel is applicable in the bankruptcy context). The question for the court is whether the Trustee's business judgment that the Asset is burdensome or of inconsequential value or benefit to the estate in the context of this case is reasonable. This remains true even when a debtor (intentionally or not) fails to schedule an asset.

Ms. Peterson makes generalized statements about alleged fraud and misconduct and what she believes is right and wrong, but she does not specifically identify how the abandonment is "rewarding" the Debtor's alleged scheme to conceal it from her creditors. Although Ms. Peterson also claims the "U.S. Trustee obtained a fraud judgment for concealment of assets owned 100% by the Debtor Woldeyohannes," this is simply untrue. No court has adjudicated this issue, and the Debtor resolved Adversary Case No. 12-02021 via a stipulated judgment which included no findings of fact. Case No. 12-02021, ECF Nos. 26, 35; Case No. 11-20003 ECF Nos. 63, 64, 78, 79.

Ms. Peterson is correct that a debtor's concealment or non-disclosure of an asset may have consequences. However, the inability of a trustee to abandon that asset is not one of those consequences. Pursuant to 11 U.S.C. § 554, by not scheduling the Asset it has remained "trapped" in the estate for more than a decade. To the extent a transaction relating to A to Zee, LLC may have occurred while the asset was still part of the Debtor's

estate, the validity and enforceability of such a transaction can be litigated in the state courts and it is possible Ms. Peterson's estoppel and standing arguments may prevail in that context. However, they are irrelevant with respect to the subject of the Trustee's abandonment of the Asset now.

3. The Asset is adequately identified.

Ms. Peterson also challenges the Trustee's description of the Asset in the Notice. Specifically, the Trustee's choice to describe the property being abandoned as: any interest in the Asset that the Debtor "has, had, or may have had." Ms. Peterson's issue with this hedging language appears to be that it does not commit to the narrative she has adopted throughout this litigation, *i.e.,* that the Asset has always been and still is owned by the Debtor.

For over a decade the Debtor and Ms. Peterson have argued about the efficacy of the Debtor's attempted dissociation from A to Zee, LLC. However, no court has finally adjudicated what effect, if any, the Debtor's actions may have had with respect to the Asset, and thus the Trustee's choice to use hedging language is not inappropriate. Further, the court finds the description of the Asset is sufficiently specific so as to enable any party in interest to understand, with certainty, what property the Trustee seeks to abandon. Indeed, it is abundantly clear from her Objection that Ms. Peterson understands exactly what is being abandoned. Accordingly, the court finds Ms. Peterson's objection as to the Asset's description unpersuasive.

Ms. Peterson's Supplemental Memorandum

After the May 6th hearing on the Objection the court set a deadline for parties in interest to file supplemental legal support for their positions. ECF No. 289. Ms. Peterson argues in her supplemental brief (ECF No. 295 the "Supplement") that the Trustee

impermissibly took "no action" with respect to the administration of the Asset, citing *In re Ira Haupt & Co*., 398 F.2d 607, 613 (2d Cir. 1968) and *Jepsen v. Taylor (In re Taylor),* Nos. 15-31208 (AMN), 2019 Bankr. LEXIS 2828; 2019 WL 4281896 (Bankr. D. Conn. Sep. 10, 2019). However, both cases discuss a trustee's duty to take *some* action to administer assets of the estate, rather than *no* action (in particular these cases relate to causes of action held by the estate). A trustee has many options when administering assets of the estate, one of which is precisely what the Trustee now seeks: abandonment.

> "A trustee has a wide variety of choices as to claims of the bankrupt - to prosecute, allow another to prosecute on mutually satisfactory terms, sell, **<u>or abandon</u>**, he may not simply do nothing."
> *In re Taylor* at *18 (emphasis added).

To the extent they are applicable, these cases actually support this outcome. The prior trustee took no action with respect to the Asset, leaving it in an unadministered limbo for years. Now this case has been reopened, and the Trustee is fulfilling her duty by taking the affirmative action of administering the Asset via abandonment. Although Ms. Peterson may believe the Trustee should take or should have taken a different course of action with respect to the Asset (and any claims that may surround it), the Court must defer to the Trustee's business judgment so long as it is reasonable.

For all of these reasons, the Trustee's decision to abandon the Asset is reasonable and abandonment is a valid administrative action by the Trustee.

Ms. Peterson's remaining arguments in the Supplement have been considered and found to be without merit.

<u>Edward Taiman's Supplemental Memorandum</u>

Attorney Edward Taiman also filed a supplemental memorandum. ECF No. 294 (the "Taiman Memo"). Notably, the Taiman Memo is not related to any independent

objection filed by Mr. Taiman and does not request an Order from the court pursuant to Fed.R.Bankr.P. 9013(a). Mr. Taiman is not a creditor of this estate, does not currently represent any party in interest in this 2011 case, is without standing to object to the Notice or to request an order relating to it in the first place, and so the Taiman Memo can be disregarded for those reasons. However, the court also finds the arguments articulated in the Taiman Memo to be unpersuasive even were they properly before the court. The Court has already discussed the business judgment standard which applies to a trustee's abandonment at length and Mr. Taiman has not set forth any authority which counters the court's conclusion on that issue.

Mr. Taiman also offers no authority in support of his argument that the court should (or even can) apply the equitable principle of laches under these circumstances. However, it is readily apparent upon review of the public docket in this case that the ownership status of A to Zee, LLC was disputed long before 2011. Questions about the Debtor's ownership interest in A to Zee, LLC and her dissociation therefrom have been raised on numerous occasions and have been raised in the presence of Mr. Taiman and others who have allegedly relied upon this notoriously unresolved issue when transacting with the Debtor and/or A to Zee, LLC. The provisions of 11 U.S.C. § 554(c) and (d) are also clear and readily available to the public for review. To the extent anyone negligently failed to diligently research the ownership status of A to Zee, LLC, the Debtor's ability to engage in transactions relating to it as a result of this bankruptcy, or to otherwise address these known issues when dealing with them, their assumption of that risk was at their own peril. Accordingly, the Taiman Memo is unpersuasive on all issues, even if Mr. Taiman had standing to raise these arguments.

*<u>The Motion to Reopen the Evidentiary Record Will Be Denied</u>*

Through her Evidence Motion, Ms. Peterson also seeks to re-open the record to offer additional evidence, in accordance with Federal Rules of Bankruptcy Procedure 9014 and 9017. ECF No. 300. Although the authority to reopen evidence prior to the entry of judgment is more than likely derivative of the authority conferred in Rule 59, a contextual reading of the rule ostensibly presumes that a court previously entered a judgment, whereas, here, Peterson seeks to reopen evidence prior to the court's rendering judgment. Nevertheless, while it may not be clear which Federal Rule of Civil Procedure authorizes a court to reopen an evidentiary record prior to judgment, it is clear that this Court has the ability to do so and that the decision to reopen an evidentiary record prior to judgment is “committed to the sound discretion of the [ ] court.” *Romeo v. Sherry*, 308 F.Supp.2d 128, 138–39 (E.D.N.Y. 2004); *See also In re Dunson*, No. 13-10604-WHD, 2014 WL 7793689, at *1 (Bankr. N.D. Ga. Sept. 16, 2014).

The Second Circuit has articulated that the reopening of a hearing for additional or supplemental evidence may be justified so long as (1) the additional evidence was material; (2) the opposing party had an opportunity for cross-examination; and (3) the opposing party suffered no prejudice. *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 674, 679 (2d Cir. 1998). Additionally, in such circumstances, courts are advised to consider whether the failure originally to introduce the evidence reflected a lack of diligence on the part of the moving party. *e.g., Garcia v. Woman's Hosp.*, 97 F.3d 810, 814 (5th Cir. 1996).

Here, Ms. Peterson seeks to introduce a document which prominently states "**CONFIDENTIAL SETTLEMENT COMMUNICATION FOR PURPOSES OF COMPROMISE NEGOTIATIONS THROUGH MEDIATION**" and cites to Connecticut

Code of Evidence § 4-8 (analogous to Federal Rule of Evidence 408). The document appears to have been created in relation to Superior Court Case No. HHD-CV-23-5078361-S (the "2023 Boatman/Taiman Case"), which appears to relate in part to certain real property owned by the LLC.

In the first instance, documents prepared in the context of settlement discussions are not admissible, pursuant to Federal Rule of Evidence 408. However, the content of the document, despite also being unauthenticated and inadmissible hearsay, also appears to have little to no probative value as to the issues presently before the court. Indeed, this only serves to further highlight the substantial and ongoing litigation surrounding the Asset which would have to be addressed by any bona fide purchaser and therefore supports the Trustee's determination that the Asset has no value to the estate and should be abandoned. [1]

The Court also notes Ms. Peterson is the plaintiff in the 2023 Boatman/Taiman Case which has been pending for several years now, and so Ms. Peterson could have obtained this same information via discovery in that case prior to the May 6, 2026, hearing on the Objection. Therefore, her failure to present this information prior to, or during the May 6th hearing is not excusable neglect, within the meaning of Fed.R.Civ.P. 59 or 60(b), and so reflects a lack of diligence on her part.

Even ignoring its apparent inadmissibility, accepting Ms. Peterson's belated submission of this non-probative, immaterial exhibit would be prejudicial to the Trustee.

[1] No party to the 2023 Boatman/Taiman Case (other than Attorney Taiman in this case) was served with the Evidence Motion and it seems likely that further litigation will follow as a result.

As a non-party to the 2023 Boatman/Taiman Case, the Trustee would not have had an opportunity to depose or cross examine any party with respect to this document.

For these reasons the Evidence Motion must be denied.

<u>Conclusion</u>

Having considered all other arguments made and finding them to be without merit, it is hereby

**ORDERED**: The Objection (ECF No. 280) is OVERRULED and the Trustee's abandonment of the estate's interest in A to Zee, LLC is deemed effective as of the date of this Order; and it is further

**ORDERED:** The Evidence Motion (ECF No. 300) is DENIED.

Dated this 30th day of September, 2026, at New Haven, Connecticut.

*Ann M. Nevins*
*Chief United States Bankruptcy Judge*
*District of Connecticut*